James CAREY

v.

H. SCHULDT.

Civ. A. No. 13894.

United States District Court
E. D. Louisiana,
New Orleans Division.

July 25, 1967.

Kent A. Russell, Fiasconaro, Heisler, Windhorst & de Laup, New Orleans, La., for plaintiff.

Maurie D. Yager, Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for defendant.

J. Walter Ward, Jr., Christovich & Kearney, New Orleans, La., for Standard Fruit & Steamship Co.

HEEBE, District Judge:

This lawsuit was brought by a longshoreman to recover damages for injuries sustained while loading cargo aboard the defendant's vessel. The defendant impleaded the stevedore, Standard Fruit and Steamship Company (hereafter "Standard"). The plaintiff propounded 37 written interrogatories to both the defendant and the third-party defendant pursuant to Federal Rule of Civil Procedure 33, which allows written interrogatories to be served upon any "adverse party." The defendant answered the interrogatories but Standard objected on the grounds that it has not filed an answer to the plaintiff's complaint and therefore is not "adverse" within the meaning of Rule 33.

We are presented with the vexatious problem of determining the meaning of "adverse party" as contained in Rule

33.[1] This is troublesome because the Rules Advisory Committee omitted an explanatory comment when it proposed the rule. Lacking guidance, the courts have reached widely divergent and often confusing results.

Clearly the most apparent meaning of "adversity" is the direct clash between the plaintiff and defendant in the normal two-party lawsuit. But it has never been suggested that "adversity" be limited to this simple situation. Even in the multiparty suit, with all its subtle facets, a few firm peaks of "adversity" are apparent. When the parties exchange pleadings, one asserting a claim for relief against the other, the parties are "adverse." 2A Barron & Holtzoff, Federal Practice and Procedure § 774; 4 Moore, Federal Practice ¶ 33.06. This encompasses the situations, for example, when the defendant asserts a claim against a third-party defendant or the third-party defendant counterclaims against the plaintiff or cross claims are filed between defendants. The difficulty occurs when, as in this case, the "adversity" is not so readily apparent. Here lies the courts' task—to hammer out a workable definition of "adverse party."

"Adverse" is defined in the dictionary as "having opposing interests." Black's Law Dictionary, p. 73 (4th ed.); Webster's Seventh New Collegiate Dictionary, p. 14 (1963). However, the courts reject this test. E. g., M.V.M., Inc. v. St. Paul Fire & Marine Ins. Co., 20 F.R.D. 296 (S.D.N.Y.1957); Kestner v. Reading Co., 21 F.R.D. 303 (E.D.Pa.1957). The judicial definition of "adverse" parties is those parties who are on opposite sides of an issue raised by the pleadings or otherwise presented by the record. Smigiel v. Compagnie De Transports Oceaniques, 183 F.Supp.

518 (E.D.Pa.1960); Piro v. Port Lines, 22 F.R.D. 231 (E.D.N.Y.1958); Kestner v. Reading Co., 21 F.R.D. 303 (E.D.Pa. 1957); Cooke v. Kilgore Mfg. Co., 15 F.R.D. 465 (N.D.Ohio 1954). This serves well as a general principle. But it requires explanation, which has not been forthcoming, for proper application to specific situations. In determining "adversity," the focus is on issues and not interests. Conflicting interests, without more, does not constitute "adversity." To be "adverse" the parties must oppose each other on an issue in the case. "Adversity" does not mean that one party *must* be seeking a judgment or recovery against the other party. But it does mean that one party strives to win a point at issue at the expense of the other. When two parties are contesting an issue, and the outcome of the litigation will be, or may be, different as to either party due to the determination of that issue, then they are "adverse" within the meaning of Rule 33.

We now turn to Standard's contentions. They argue that a plaintiff and a third-party defendant are "adverse" only when the latter answers the original complaint. Some decisions support this view. Dziedzina v. Dolphin Tanker Corp., 31 F.R.D. 249 (E.D.Pa. 1962); Harris v. Marine Transport Lines, 22 F.R.D. 484 (E.D.N.Y.1958); Pettus v. Grace Line, Inc., 166 F.Supp. 463 (E.D.N.Y.1958); M.V.M., Inc. v. St. Paul Fire & Marine Ins. Co., 20 F.R.D. 296 (S.D.N.Y.1957). However, we find this position without merit. It confuses the question: "Are the parties adverse?", which is the real issue, with the question: "What do we look at to determine whether the parties are adverse?" The attempt to weld the two questions results in a blind, unthinking approach. We look to the *facts* to determine whether the parties are adverse

1. Because Standard is obviously a "party," we are concerned only with the meaning of "adverse." However, "adverse party" or "adversity" is used throughout when proper rhetoric dictates.

**394**

or not.[2] Standard's approach forecloses inquiry into the real issue by mechanically hinging "adversity" on the ritualistic exchange of pleadings. This formal ceremony does not alter the realities of the litigation. It has no bearing on the issue of whether the parties are "adverse." See Weitort v. A. H. Bull & Co., 192 F.Supp. 165 (E.D.Pa.1961); Schonberger v. Blumenkranz, 23 F.R.D. 16 (N.J.1958); Spagna v. Bruusgaard, 20 F.R.Serv. 33.21 at 483 (S.D.N.Y.1958).

██ Plaintiff seeks recovery against the shipowner on the grounds of negligence and unseaworthiness. In paragraphs VII and VIII of its answer to the third-party complaint, Standard denies that the plaintiff's injuries were caused by defendant's negligence or the unseaworthiness of the vessel. Standard further asserts the contributory negligence of the plaintiff. It is readily apparent that Standard has no intention of remaining aloof on these issues. Quite

the contrary, Standard stands prepared to oppose the plaintiff on these issues. If Standard prevails on any of these issues, then the plaintiff will be barred from recovery.[3] This makes them "adverse parties" as we construe that term.

██ It does not matter that the issues are raised by way of answer to the third-party complaint rather than by answer to the original complaint. As long as the plaintiff's complaint states no claim for relief against the third-party defendant, the latter is not required to answer the complaint. Hagans v. Ellerman & Bucknall S/S Co., Ltd., 318 F.2d 563, 586 (3rd Cir. 1963). Rule 14 allows the third-party defendant to "assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim," but it does not specify in what manner this must be done.[4] M.V.M., Inc., v. St. Paul Fire & Marine Ins. Co., supra, held that such defenses must be asserted by way of an-

2. See Metropolitan Life Ins. Co. v. Jackson, 178 F.Supp. 361 (E.D.Pa.1959); McAllister Lighterage Line, Inc. v. Oil Barge Vejoil No. 5, 13 F.R.Serv. 33.21 Case 1 at 587 (S.D.N.Y.1949). The commentators also urge this approach. 2A Barron & Holtzoff, Federal Practice & Procedure § 774; Field & McKusick, Maine Civil Practice § 33.2; 4 Moore Federal Practice ¶ 33.06; Feldman, A Puzzle Under the Federal Impleader Rule, 34 Tulane L.Rev. 77, 80 (1959); 71 Harv.L.Rev. 734, 736 (1958).

Most often the question may be answered by reading the pleadings, whether the pleadings be ones exchanged between the two parties or with other parties. See text accompanying and subsequent to footnote 4. But some situations may require the court to pierce the pleadings and look at the actual factual situation in order to discover "adverse parties." This would be appropriate when the pleadings fail to spotlight the actual adversity. A good example is found in Henry Ansbacher & Co. v. Klebanow, 362 F.2d 569 (2nd Cir. 1966). In that case a partnership was in bankruptcy proceedings. It had assets of about four million dollars. Ten banks filed claims as secured creditors totaling almost twenty million dollars. Several partners filed

claims as unsecured creditors totaling almost three million dollars. The partners argued that the banks' claims were invalid. However, due to the inaction of the trustee, an objection to the banks' claims had not been filed. While the pleadings did not reveal the adversity, it was readily apparent from the facts that the parties were adverse. The court allowed the partners to serve interrogatories against the banks.

3. Defenses raised by the third-party defendant to the plaintiff's claim against the defendant, whether the defendant raises them or not, will, if successful, inure to the benefit of the defendant. Newton v. New York Life Ins. Co., 210 F.Supp. 859 (N.D.Cal.1962).

4. The reason for allowing the third-party defendant to assert these defenses is that it is bound by the adjudication of defendant's liability to the plaintiff. Thus, it affords protection to the third-party defendant if the defendant neglects to assert the defenses. 3 Moore, Federal Practice ¶ 14.13. This principle was recognized by the Fifth Circuit in Tejas Development Co. v. McGough Bros., 167 F.2d 268 (1948) and Williams v. Keyes, 5 Cir., 125 F.2d 208 (1942).

swer to the original complaint in order for the parties to be "adverse." However, this decision was bottomed on the mechanistic approach for determining adversity which Standard advocates and which we have already rejected. We hold that it is proper to assert them in the answer to the third-party complaint. This clearly received the implied approval of the court in American Export Lines v. Revel, 262 F.2d (4th Cir. 1958). See also Weitort v. A. H. Bull & Co., supra, which was cited with approval in Wiggins v. City of Philadelphia, 331 F.2d 521 (3rd Cir. 1964). The *Wiggins* case also criticized the M.V.M., Inc. decision. The answer to the third-party complaint is the most logical place in which to raise the defenses. For it is the third-party plaintiff who has called the third-party defendant to the fray, and it is only natural to expect the third-party defendant to state in his answer to the third-party plaintiff the reasons why he should not be held liable, whether those reasons relate to the plaintiff's claim against the defendant or to the defendant's claim against the third-party defendant. This simplifies the pleading phase of the litigation which is one of the aims of the Federal Rules. Further, it is in complete accord with the basic tenet of notice pleading since Rule 5(a) requires that a copy of the third-party complaint and answer be served upon all the parties to the suit. So the plaintiff is in no way harmed by our decision. To require an answer to the original complaint in this situation would be a reversion to mere ceremonial pleading, and contrary to the spirit of the Federal Rules.

■ The fact that the plaintiff could not have sued Standard originally due to the Longshoremen's & Harbor Workers' Act, 33 U.S.C. § 905, is irrelevant. Regardless of what may or may not have been done originally, we must look at this lawsuit and the relationship of the parties as they now stand in order to determine whether they are adverse. Standard is now a party to this lawsuit and now poses a very serious threat to recovery by the plaintiff. Standard is now adverse to the plaintiff. The fact that neither the plaintiff nor Standard originally engaged the other as an adversary is irrelevant; Standard has a vital interest in not relying solely on its ability to defeat the third-party claim, but rather in meeting the plaintiff's claim at its inception. This is due to the fact that in many instances the stevedore is unable to defeat the third-party claim once judgment is rendered in favor of the longshoreman. Hence, we may expect Standard to participate very vigorously on these issues. If the shipowner is apathetic on these issues, the adversity between the plaintiff and Standard is clear; and even if the shipowner very actively presents these defenses, it does not alter the adversity between the plaintiff and Standard. The fact that the defendant is adverse to the plaintiff does not make Standard any less adverse.

■ Having determined that the parties are "adverse," we reach the question of the scope of interrogatories. At first glance, the situation does not appear to present a problem. Rule 33 allows interrogatories to be served upon any "adverse party." It further provides: "Interrogatories may relate to any matters which can be inquired into under Rule 26(b) * * *." Rule 26(b) permits inquiry into any unprivileged, relevant matter "whether it relates to the claim or defense of the examining party or to the claim or defense of *any other party* * * *." (emphasis added) Thus, it appears to be a simple matter of first determining whether the parties are adverse or not, and, if so, then permitting interrogatories of the scope allowed by Rule 26(b). However, after careful consideration it will appear that in multiparty lawsuits, most of the parties will be adverse to one or more of the other parties because of the broad meaning of "adverse party." Thus, when a party is adverse to another party on only one issue, he may inquire into matters rele-

vant to the case as a whole even though it is irrelevant to that issue. It may be that the intent of the Rules Committee was to limit interrogatories to the issue on which the parties are adverse, at least in situations where the "adversity," although quite real as to certain issues, is not due to a direct claim for relief by one party against another party. At least two decisions take this view. Weitort v. A. H. Bull & Co., supra; Schonberger v. Blumenkranz, supra. Such a view seems to give more weight to the requirement of "adversity" in Rule 33. However, it does so at the expense of the provision allowing interrogatories the same scope as Rule 26(b). It substitutes "adverse issue" for "adverse party." We cannot subscribe to this view.

■■■ We hold that once the parties are found to be adverse on any material and substantial issue, then the only limits to the scope of the interrogatories must be found in Rule 26(b). Interrogatories between the plaintiff and defendant in multiparty suits, for example, are not limited solely to the issues on which they are adverse, even though they may not be adverse on all the issues presented in such a case. 4 Moore, Federal Practice ¶ 33.10. The only reason that can be advanced for distinguishing that situation and the one we have here is that the "adversity" between the plaintiff and Standard is not due to a claim for relief by one against the other. Yet they are still "adverse." We think that once the parties are deemed "adverse," regardless of how the adversity arises, the matter is settled. We refuse to read "adverse issue" into the rule.

We might feel differently if good reasons supported the "adverse party" requirement. Rule 33, as originally proposed, allowed interrogatories to be served upon "any other party." Report of the Advisory Committee, April 1937, p. 84. But "adverse party" was substi-tuted without explanation. Final Report of the Advisory Committee, November 1937, p. 23. Some courts felt that the lack of provisions for notice to other parties and opportunity for cross interrogatories were the reasons for the rule. E. g., Cooke v. Kilgore Mfg. Co., supra; In Re City of Coral Gables, 1 F.R.D. 600 (S.D.Fla.1941). However, these "reasons," which have been severely criticized, do not logically support the requirement. See 4 Moore, Federal Practice ¶ 33.06. Nor, after careful reflection, does any valid reason suggest itself to us. Further, the requirement is criticized by the commentators. 2A Barron & Holtzoff, Federal Practice and Procedure § 774; 4 Moore, Federal Practice ¶ 33.06; 60 Colum.L.Rev. 882 (1960). In addition, at least three states have modified their rules, patterned after the Federal Rules, to allow interrogatories to be served upon "any other party." Rule 1.340 of the 1967 Florida Rules of Civil Procedure, 30 F.S.A.; Rule 213 of the Illinois Supreme Court Rules; Rule 4:23-1 of the New Jersey Revised Rules.[5] The comment to the well-considered Illinois Rule states:

"In the Committee's opinion no reason exists for restricting the direction of interrogatories to adverse parties when depositions may be taken from coparties."

Perhaps the Federal Rule should be modified. Interrogatories are the cheapest and most convenient means of discovery. We can see no benefit to be derived by limiting them solely to "adverse parties." If it be intended that they be limited to the issues on which the particular parties are adverse, then this should be made clear. But again, we see no benefit to be derived by doing so, since the information is available by other and more costly means of discovery, and any abuse may be cured by the court under Rule 30(b) or 30(d).

---

5. The Florida rule does not provide for either notice to, or cross interrogatories by, other parties. Both the Illinois and New Jersey rule afford notice to the other parties.

The objection to the interrogatories that the parties are not adverse is overruled and Standard is ordered to answer the interrogatories.